450

Jasper ANDERS, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 998.

United States District Court
W. D. Virginia,
at Abingdon.

July 26, 1963.

Robert T. Winston, Jr., Norton, Va., for plaintiff.

H. Garnett Scott, Asst. U. S. Atty., Roanoke, Va., for defendant.

MICHIE, District Judge.

On May 17, 1960 Jasper Anders filed an application for the establishment of a period of disability and for disability insurance benefits under the Social Security Act, as amended. Under the provisions of § 202(j) of the Act (42 U.S. C.A. § 402(j)), such an application will cover a disability occurring within three months after the month of filing and likewise will cover a disability occurring within twelve months before the month of filing (§ 202(j) (1) and (2) of the Act, 42 U.S.C.A. § 402(j) (1) and (2)). To recover under this application the plaintiff therefore must show that he became disabled within the meaning of the Act on some date between April 30, 1959 and September 1, 1960.

So far as material in this case the term "disability" is defined in § 216(i) (1) of the Act (42 U.S.C.A. § 416(i) (1)) as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration."

From a final decision of the Secretary the claimant may, in effect, appeal by filing suit in a Federal District Court as this claimant has done. But in such a suit "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive". Section 205(g) of the Act (42 U.S.C.A. § 405 (g)).

As indicated above, the plaintiff must show that he was disabled within the definition in the Act at some time between April 30, 1959 and September 1, 1960. But the only evidence to the effect that Mr. Anders is disabled consists of a letter from Dr. Daniel Gabriel dated *April 10, 1962* which states that Mr. Anders *is* permanently and totally disabled from gainful occupation but does not say *how long he has been so disabled*. On the other hand, there is ample medical evidence which indicates that, during the critical period, though Mr. Anders suffered from some handicaps he was not disabled within the meaning of the Act.

In a report from Dr. William H. Anderson of studies done on August 30, 1960, the doctor says that the patient was uncooperative so that the tests are not valid results. He goes on to state that he had previously tested Mr. Anders in May of 1960, at which time his vital capacity was 100%, maximum breathing capacity 85%, residual air 31% of total

lung volume and expiratory flow rates normal.

Passing over the August 30th findings as "not valid results" we come next to a report of Dr. Burgin E. Dossett of June 27, 1960. This report refers to a previous history of shortness of breath for about two years; also intolerance to heat, palpitation and tachycardia and general malaise. The findings were generally normal. The patient was treated with Phenobarbital for his nervousness. "He responded well to this".

A report from Dr. Nat C. Ewing under date of July 12, 1960 refers to "Dyspnea—unexplained." And elsewhere in the report to "Dyspnea on moderate exercise" and finally to a "History of paroxysmal auricular tachycardio".

The next report is from the Virginia Vocational Rehabilitation Agency under date of August 24, 1960 and shows "No employment handicap".

As previously indicated, the next report is that of August 30, 1960, the results of which were said by the doctor not to be valid and which contain the results of the previous test in May of 1960.

A report of Dr. Del Rosario, a resident of the Miners Memorial Hospital, dated September 23, 1960, diagnosed simple pneumoconiosis, esophageal histal hernia and post excision pterygium right eye. All of the medical reports agree that the hernia and the eye situation are not serious. The Del Rosario report also refers to shortness of breath, chest pain and "pulmonary fibrosis and emphysema compatible with simple pneumoconiosis."

As of October 12, 1961, October 31, 1960, November 14, 1960 and December 21, 1960, there are reports which refer to "epigastric pain and fatigue" as well as dyspnea and chest pain. In February of 1961, Mr. Anders was examined again by Dr. Anderson with findings of "predicted vital capacity is 3820, measured is 5370. Predicted maximum breathing capacity is 112 liters per minute, measured is 90 liters per minute * * *. It is noted that this is almost identical with the results obtained on May 26, 1960."

A report of W. J. Power, Radiologist, under date of March 16, 1961, states:

"The mild degree of pulmonary fibrosis and emphysema in both lung fields remains unchanged. * * * The heart is within normal limits in size and configuration. The basal pleural thickening at the costophrenic sulcus, right, anterior, is also unchanged. No evidence of recent active parenychmal disease is identified. No change in the old left hilar and mid-lung field calcifications.

"IMPRESSION: Simple pneumoconiosis without evidence of any recent intrathoracic disease."

Finally we come to a letter from Dr. Daniel Gabriel dated April 10, 1962, long after the critical date has passed, who says:

"Mr. Jasper Anders is permanently and totally disabled from gainful occupation because of a severe hypertensive heart condition. * * *

"This man also has in addition to the above condition duo*dual* ulcers, which is active and requires a special diet and medication. He also has exertional dyspnea because of pulmonary fibrosis and emphysema in both lungs. On slight exertion he develops chest pains and shortness of breath.

"Mr. Anders has been a coal miner all his life and with his limited education and his physical disability I know of no work he is capable of performing."

Accepting Dr. Gabriel's findings at face value, we still find that there is no evidence of any such conditions within the period within which disability must be proved, i. e., the period terminating September 1, 1960, as Dr. Gabriel's findings are of a date approximately a year and a half later than that and there are no findings nearer the critical period which establish any real disability.

452

It may be that Mr. Anders has become actually disabled subsequent to the critical period and that upon the filing of a new application he might now be entitled to the relief sought in the application now before the court. But he certainly is not entitled to any relief on this application.

An order will be entered accordingly.